IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

EUGENE DIVISION

**AMALIA FELICITA MENDOZA LOPEZ**,

Plaintiff,

v.

**WEYERHAEUSER COMPANY;**
**DIAL TEMPORARY HELP SERVICE, INC.**

Defendants.

6:22-cv-00882-AA
**OPINION & ORDER**

_____

AIKEN, District Judge.

In this employment discrimination action, plaintiff alleges sexual harassment and retaliation under Title VII of the Civil Rights Act, and failure to provide reasonable safety and accommodation and retaliation under Oregon state law. Plaintiff asserts claims against defendant Weyerhaeuser NR Company ("Weyerhaeuser") and Dial Temporary Help Service, Inc., d/b/a Employers Overload ("EO"). Before the Court is Weyerhaeuser's Motion for Summary Judgment, ECF No.

36. For the reasons discussed, Weyerhaeuser's Motion for Summary Judgment is GRANTED and Weyerhaeuser is DISMISSED as a defendant from this case.

## BACKGROUND

### I. Harassment Complaint

Weyerhaeuser is a timber and wood products company. It maintains a nursery and seed orchard in Turner, Oregon (the "Turner Nursery") where it harvests cones and grows tree seedlings for replanting. Molina Decl., ¶ 2, ECF No. 39. EO is a full-service staffing company with offices in Tigard, Oregon that partners with businesses to provide workforce and staffing solutions. *See* EO Answer at 2 ¶ 4, ECF No. 14. Plaintiff is a seasonal agricultural worker employed at the Turner Nursery between 2016 and 2021. Walters Decl. ¶ 2, ECF No. 47.

At the Turner Nursery, plaintiff began a relationship with a co-worker, Antonio Gonzalez, who held a senior position to plaintiff. The couple had a child together but separated in December 2020. Mendoza Decl., ¶ 2, ECF No. 46. In June 2021, plaintiff reported to EO that Gonzalez had displayed sexually inappropriate behavior toward her three times in 2021, in April, May, and June, respectively. Walters Decl., ¶ 2. In her Complaint, plaintiff alleges that Gonzalez made sexual advances and threatened that if she did not comply, she would be fired. Compl. ¶¶ 18-20. Plaintiff reported the incidents to her Supervisor, David Perfecto, an EO employee, and EO's Human Resources Manager, Rosa Capote. Perfecto Decl., ¶ 10, ECF No. 38; Compl. ¶¶ 21, 22.

Capote investigated plaintiff's complaint, and later retained a third-party HR service, Trupp, to conduct an independent investigation. Suarez Decl., Ex. A at 2. Ultimately, Trupp and EO found plaintiff's claims unsubstantiated. *See id.* (stating that Trupp was unable to substantiate claims, summarizing witnesses statements, reviewing text messages from Gonzalez, and finding Gonzalez credible).

On July 2, 2021, plaintiff obtained a restraining order against Gonzalez and showed it to Gutierrez, her on-site supervisor and an EO employee. Perfecto Decl., ¶ 10. The restraining order stated that plaintiff and Gonzalez could remain working together, but that Gonzalez must not have intentional contact with plaintiff and must stay 150 feet away from her. Compl. ¶ 24. Later, plaintiff reported to Perfecto and Gutierrez that Gonzalez failed to comply with the restraining order. Mendoza Decl., ¶ 6. EO then designated separate workplace entrances and lunch break locations for plaintiff and Gonzalez. *Id.* ¶ 7.

Plaintiff's work planting seeds and pulling weeds at the Turner Nursery was seasonal. Resp. to RFA Nos. 19, 24. On August 24, 2021, plaintiff's work ended and plaintiff, along with 23 other EO employees, was laid off. No one at Weyerhaeuser directed EO to end plaintiff's assignment. Perfecto Decl., ¶ 11. Plaintiff and Capote discussed finding plaintiff another assignment. Compl. ¶ 27, 30. EO offered plaintiff a position at another company, but it was for a night shift that plaintiff could not accept. *Id.* Plaintiff filed for unemployment benefits with EO. *Id.* Plaintiff received a paystub from a new employer, Scotts MiracleGro for a period beginning September 12, 2021.

In October 2021, plaintiff filed a complaint against both Weyerhaeuser and EO with the Oregon Bureau of Labor and Industries ("BOLI"). Compl. ¶ 10. At some point, BOLI provided notice to Weyerhaeuser of plaintiff's complaint against it. Weyerhaeuser asked EO to place Gonzalez on leave while it responded to the complaint. Suarez Decl. ¶2 Ex. A

## II. Weyerhaeuser and EO Employment Terms and Practices

In December 2019, Weyerhaeuser and EO executed a Master Services Contract ("MSC") and a Nursery Services Supplemental Agreement ("NSSA") for work to be performed at the Turner Nursery, including providing temporary, seasonal workers. *See* Mehlschau Decl., Exs. A-B ("MSC"), ECF No. 40

The MSC unambiguously confers sole responsibility to EO (referred to as "Contractor" in the MSC) to manage, supervise, and control the work performed by EO employees:

> **A. Contractor solely responsible for Work**. Contractor shall have sole and exclusive responsibility for the performance of all Work. This includes all of the Work, whether it is performed by the Contractor and its employees, or by a subcontractor, supplier or other vendor (at any tier) or employees thereof, or other agents (individually and collectively, "Subcontractor"). Weyerhaeuser recognizes and agrees that Contractor is an independent contractor engaged in an independently established and maintained trade or business. . . Nothing in this Master Contract or a Supplemental Agreement is intended to make Contractor an agent of Weyerhaeuser or to create or imply a joint venture, partnership or employer-employee relationship between Weyerhaeuser and Contractor.
>
> **B. Contractor to manage and supervise all Work**. Contractor shall be solely responsible for the management and supervision of all its employees and Subcontractors. Contractor shall have the exclusive right to determine the type and amount of machinery, tools and equipment used to perform the Work, and Weyerhaeuser has no right to

control the methods or means by which Contractor performs the Work, provided that Contractor agrees to commence and prosecute the Work with due diligence, subject to the provisions of this Master Contract[.]

**C. Contractor to manage employees and Subcontractors.** Contractor reserves the exclusive right in the management of its independent business to hire and fire any person it desires and Weyerhaeuser shall have no authority to hire, fire, discipline, or supervise any employee or Subcontractor of Contractor. Contractor is solely responsible to determine the pay and other condition of employment of its employees and Subcontractors. Weyerhaeuser will not maintain or have access to the payroll, time or other employment records of employees of Contractor or its Subcontractors.

\*\*\*\*\*

**E. Onsite Contractor representative.** At all times when Work is being performed, Contractor shall ensure that there is an onsite person fully authorized to represent the Contractor in interactions with Weyerhaeuser with respect to the Work being performed at each Work site (the "Contractor's Representative"), and that Weyerhaeuser is made aware of the identity of the Contractor's Representative at each Work site at all times[.]

MSC at 2 ¶ 4 (boldface in original).

Plaintiff does not refute that during the time related to the allegations in her Complaint, from April 2021 through August 2021, EO employed her. *See* Crowhurst Decl., Ex. A; Resp. to RFA Nos. 1, 19 ("Resp. to RFA"). During that time, EO assigned plaintiff and other workers to a seasonal assignment at the Turner Nursery as a General Laborer removing weeds and sowing seeds. Compl. at 4 ¶ 13, ECF No. 1; Molina Decl., ¶ 3.

Weyerhaeuser did not have any input into EO's decision to hire, assign, discipline, or terminate plaintiff. Molina Decl., ¶¶ 3, 6. As seen in the text of the MSC above, EO had "exclusive right in the management of its independent business

Page 5 –OPINION & ORDER

to hire and fire any person it desires," and Weyerhaeuser had "no authority to hire, fire, discipline, or supervise any employee" of EO. MSC at 2, ¶ 4C.

EO's Human Resources Manager, Rosa Capote, "handle[d]…the hiring and firing of [EO] employees and claim investigations from employees. . ." Compl. ¶ 16; Resp. to RFA No. 7; EO Answer ¶ 12.

Weyerhaeuser did not supervise plaintiff, set her schedule, or track or record her work hours. Perfecto Decl., ¶ 4-7, ECF No. 38, Molina Decl., ¶¶ 4-7. Plaintiff's direct supervisors were EO employees, Perfecto and Gutierrez, who worked onsite at the Turner Nursery in areas dedicated solely to EO. Compl. ¶¶ 14-15; Resp. to RFA Nos. 3, 5.; Perfecto Decl., ¶ 4. Pursuant to the MSC, EO was "solely responsible for the management and supervision of all its employees." MSC at 2 ¶ 4B. Weyerhaeuser had "no right to control the methods or means by which [EO] performs the Work." *Id*.

During the relevant time, Weyerhaeuser employed only seven employees at the Turner Nursery, all of whom worked at Weyerhaeuser's offices, and not in the field planting trees or weeding where plaintiff worked. Although both Weyerhaeuser and EO employees worked at the Turner Nursery, they used separate parking lots, break rooms, restrooms, offices, and timekeeping systems. Perfecto Decl., ¶¶ 7, 9; Molina Decl., ¶¶ 7, 9. 5. EO performed all accounting and payroll, determined eligibility for raises and bonuses, and issued W-2s for tax reporting for its employees, including plaintiff. Resp. to RFA Nos. 15- 18; Mehlschau Decl., ¶¶ 5-7.

Under the MSC, EO was "solely responsible to determine the pay and other condition [sic] of employment of its employees." *Id*. Weyerhaeuser did "not maintain

or have access to the payroll, time or other employment records of employees of" EO. MSC at 2 ¶ 4C; Perfecto Decl., ¶ 7. In addition, EO procured workers' compensation and industrial accident insurance coverage for its employees who worked on assignments, including at Turner Nursery. MSC at 9 ¶ 10.

## LEGAL STANDARD

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. 56(a). "A fact is material if it could affect the outcome of the suit under the governing substantive law." *Miller v. Glenn Miller Prods., Inc.*, 454 F.3d 975, 987 (9th Cir. 2006). A party asserting that a material fact cannot be or is genuinely disputed must cite to the record or show that materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce materials sufficient to prevent a motion for summary judgment. *Zoslaw v. MCA Distributing Corp.*, 693 F.2d 870, 883 (9th Cir. 1982).

Speculation and personal belief are not enough to show a genuine issue for trial. "To survive summary judgment, a plaintiff must set forth non-speculative evidence of specific facts, not sweeping conclusory allegations." *Cafasso, U.S. ex rel. v. Gen. Dynamics C4 Sys., Inc.*, 637 F.3d 1047, 1061 (9th Cir. 2011). "[U]ncorroborated and self-serving testimony," without more, will not create a "genuine issue" of material fact precluding summary judgment. *Villiarimo v. Aloha Island Air Inc.*, 281 F.3d 1054, 1061 (9th Cir. 2002). Summary judgment is mandated "against a party who fails to make a showing sufficient to establish the existence of an element

Page 7 –OPINION & ORDER

essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex v. Catrett*, 477 U.S. 317, 322 (1986).

**DISCUSSION**

Plaintiff filed this action against Weyerhaeuser and EO asserting four separate employment law claims arising under state and federal law: sexual harassment under 42 U.S.C. § 2000e -2(a)(1); retaliation under 42 U.S.C. § 2000e-3(a); failure to provide reasonable safety accommodations to a victim of sexual assault under ORS 659A.290(2)(c); and retaliation against a victim of sexual assault under ORS 659A.290(2)(b). Compl., at 8–9.

**I.   Title VII Sexual Harassment and Retaliation under 42 U.S.C. § 2000e**

Here, there is no dispute that EO employed plaintiff. to bring a claim against Weyerhaeuser under Title VII, plaintiff must demonstrate that Weyerhaeuser was a joint employer. *U.S. Equal Emp't Opportunity Comm'n v. Glob. Horizons, Inc.*, 915 F.3d 631, 637 (9th Cir. 2019); *Dutson v. Farmers Ins. Exchange*, 815 F. Supp. 349, 351 (D. Or. 1993) (citing *Jenkins v. Travelers Ins. Co.*, 436 F. Supp. 950 (D. Or. 1977). In the Ninth Circuit, the "common-law agency test" determines whether a joint employer relationship exists under Title VII. *Glob. Horizons, Inc.*, 915 F.3d at 637.

"Under the common-law test, 'the principal guidepost' is the element of control—that is, 'the extent of control that one may exercise over the details of the work of the other.'" *Id.* (citing *Clackamas Gastroenterology Associates, C. v. Wells*, 538 U.S. 440, 448 (2003)). The non-exhaustive list of factors to consider when analyzing whether the requisite control exists are:

>  the skill required; the source of the instrumentalities and tools; the location of the work; the duration of the relationship between the parties; whether the hiring party has the right to assign additional projects to the hired party; the extent of the hired party's discretion over when and how long to work; the method of payment; the hired party's role in hiring and paying assistants; whether the work is part of the regular business of the hiring party; whether the hiring party is in business; the provision of employee benefits; and the tax treatment of the hired party.

*Id.*, (citing *Nationwide Mutual Insurance Co., v. Darden*, 503 U.S. 318, 323–24 (1992)). The Court must consider all of the components, "with no one factor being decisive." *Id.* Joint employment can be determined as a matter of law. *Lopez v. Johnson*, 333 F.3d 959 (9th Cir. 2003).

### A.   *Independent Business*

EO is an independent corporation that contracted to perform services for Weyerhaeuser. Compl. ¶ 7 ("Employers Overload was a domestic corporation doing business in Oregon with offices located in Tigard, Oregon"); EO Answer ¶ 4 (EO admitting same). EO employed its own supervisors and human resources personnel who plaintiff relied on for training, supervision, assignments, and addressing workplace concerns. Compl. ¶¶ 13-16, 27. No material dispute exists on this factor, which weighs against a finding of joint employment.

### B.   *Hiring, Discipline, and Termination*

The record is that Weyerhaeuser did not have any input into EO's decision to hire, assign, discipline, or terminate plaintiff. Perfecto Decl., ¶¶ 3, 6, 10-11; Molina Decl., ¶¶ 3, 6. Plaintiff does not produce any evidence, or assert, that Weyerhaeuser directed EO to end Mendoza's assignment. The evidence is that plaintiff's work

planting seeds and pulling weeds at the Turner Nursery was seasonal and ended in mid-August consistent with the nature of the work. Resp. to RFA Nos. 19, 24; Perfecto Decl., ¶ 11. After Mendoza's seasonal work at Turner Nursery concluded, plaintiff "spoke with Ms. Capote about finding Mendoza another assignment," but did not accept the assignment offered to her. Compl. ¶ 27. Defendant Weyerhaeuser produced substantial evidence that it had no involvement in plaintiff's termination. Perfecto Decl., ¶ 11; Molina Decl., ¶ 6. Notably, plaintiff does not claim in her declaration that any Weyerhaeuser employee was involved in her job interview, onboarding, any discipline, or her layoff.

Next, the Court has reviewed each of plaintiff's exhibits consisting of emails between Weyerhaeuser's Nursery Professional, Brian Peterson, and EO's Chief Operating Officer, Stephen Morgan, and EO's Regional Manager for Weyerhaeuser, Perfecto. The emails contain no evidence that Weyerhaeuser was involved in any hiring, discipline, or termination, of plaintiff, but offer what at best suggests that Weyerhaeuser had authority to enforce the specific performance of the terms of the MSC. Evidence in those emails is that while EO on occasion sought bottom-line approval from Weyerhaeuser, the latter consistently deferred to EO on details of employment issues. *See* Moreau v. Air Fr., 343 F.3d 1179, 1188 (9th Cir. 2003) ("[the plaintiff] does not point to any decision that correlates specific instructions to a service provider with 'control' over the service companies' employees or their working conditions. We also note that it would be a foolish business practice to contract with

a company to perform a service, but provide it with little or no guidance on exactly what services are to be performed.").

Finally, as to discipline, plaintiff points to the fact that Weyerhaeuser asked EO to remove Gonzalez from the premises after Weyerhaeuser received plaintiff's BOLI complaint. While this demonstrates that Weyerhaeuser had authority to ask EO to do so in this instance, it does not reflect that Weyerhaeuser exercised discipline over Gonzalez.

### C.  *Supervision, Direction, and Control*

The evidence is that Weyerhaeuser did not supervise, direct, instruct, or control plaintiff and did not set her schedule or track or record her work hours. Perfecto Decl., ¶¶ 4-7; Molina Decl., ¶¶ 4-7; MSC ¶ 4B. Plaintiff's Complaint alleges, and her sworn statements corroborate, that Perfecto and Gutierrez were her direct supervisors, and they were exclusively employed by EO. Compl. ¶¶ 14-15; Resp. to RFA Nos. 3, 5, 7.

Plaintiff submits text from a Nursery Services Supplemental Agreement between EO and Weyerhaeuser as evidence of direction and control. ECF No. 40-2. The Court has reviewed the text of that agreement and the evidence is that the agreement authorizes Weyerhaeuser to provide feedback on whether EO was meeting the requirements under the contract, increase the scope of work when necessary to meet production demands, and verify EO's employees' hours worked with EO's invoices. That evidence is not sufficient to demonstrate that Weyerhaeuser had control over the methods or means by which plaintiff performs her work. *See Moreau*,

343 F.3d at 1188. As evidence that Weyerhaeuser exercised control over her schedule, plaintiff refers to her declaration that Weyerhaeuser employee, David Molina, offered to transfer plaintiff to a different location after plaintiff told Molina that she had made a sexual harassment report to EO. The record however contains no evidence that Weyerhaeuser had authority to do so or that it ever actually transferred plaintiff or any EO employee to another site. This factor weighs against a finding of joint employment.

### D.   *Equipment and Tools*

The parties to not dispute that EO, not Weyerhaeuser, provided plaintiff the protective equipment and tools needed to perform her work. *See* Perfecto Decl., ¶ 8 (Perfecto declaring that EO provided equipment); Molina Decl., ¶ 8 (Molina declaring that EO provided same). Plaintiff cites to the terms in the Supplemental Agreement, noted above, that Weyerhaeuser will provide "equipment, tractors, forklifts, man lifts, ladders, trailers, bins, burlap, tags, bags, and other equipment as needed," Dkt. No. 40-2, at 5, ¶ 3A. The terms of the supplemental agreement assist the Court in finding what Weyerhaeuser had authority to do, but the evidence is that EO actually provided plaintiff's equipment. This factor weighs against a finding of joint employment.

### E.   *Location of Work*

The parties do not dispute that Weyerhaeuser and EO maintained separate facilities at the Turner Nursery, including different parking lots and separate offices, restrooms, and breakrooms located in the greenhouse and nursery production

buildings. Perfecto Decl., ¶ 9; Molina Decl., ¶ 9; Mendoza Decl., ¶ 7. This factor weighs strongly against a finding of joint employment.

### F.     *Method of Payment, Taxes, and Benefits*

The parties do not dispute that EO exclusively paid plaintiff's wages and provided her W-2 for tax reporting. Resp. to RFA Nos. 15-18. Nor do the parties dispute that EO procured workers' compensation and industrial accident insurance coverage for her. Mihlschau Decl., ¶ 10, ECF No. 40. Further, EO was solely responsible for determining plaintiff's rate of pay. Of the forty-nine emails relied on by plaintiff, only one mentions her. See ECF No. 45 at 19. That email contains a directive from EO employee Gutierrez to another EO employee to increase plaintiff's pay to $13.00 per hour effective February 2, 2021. *Id*. Therefore, this factor weighs against a finding of joint employment.

### G.     *Duration of Employment Relationship*

The evidence in the record is that plaintiff engaged in seasonal work at Turner Nursery. The parties do not provide developed argument to assist the court in evaluating this factor. Thus, the Court provides little weight to it, one way or the other.

### H.     *Skill Required and Part of Regular Business*

The evidence is that plaintiff did not require any significant skills to pull weeds and sow seeds but that such activities were part of Weyerhaeuser's regular business of growing tree seedlings for replanting. This factor weighs more in favor of finding

that plaintiff's labor was a part of Weyerhaeuser's regular business, and accordingly, in favor of joint employment.

### I.   Overall Weight of Factors

The overall weight of the factors—especially the "principal guidepost…element of control"—overwhelmingly weighs against a finding of joint employment. *Glob. Horizons*, 915 F.3d at 638. The record overwhelmingly tips the scales in favor of that finding, as does a review of Plaintiff's Complaint, which does not reference or identify any Weyerhaeuser employees. Compl., ¶¶ 14–17. Likewise, plaintiff's Initial Disclosures Pursuant to LR 26-7 and Response to Weyerhaeuser's First Set of Discovery Requests do not identify a single Weyerhaeuser employee that she claims has knowledge of the facts concerning the claims or defenses at issue in her lawsuit. Crowhurst Decl., Exs. D-E. On this record, the Court cannot find that, as a matter of law, Weyerhaeuser is plaintiff's joint employer, as there is no evidence that it had any involvement in the claims and allegations raised in this lawsuit.

### II.   *Harassment and Retaliation Under ORS 659A.290(2)*

Employment status is a question of law under ORS Chapter 659A. *McClusky v. City of N. Bend*, 308 Or. App. 138, 142 (2020), *rev. den.*, 368 Or. 37 (2021) (determining that whether a party has the "legal status of employee, or employer," the "right to control," and "to the extent contractual agreements bear on the right to control, as a general rule, the construction of a contract" is a question of law") (quoting *Schaff v. Ray's Land & Sea Food Co., Inc.*, 334 Or. 94, 101 (2002); *HDG Enterprises v. Natl. Council on Comp. Ins.*, 121 Or. App. 513, 518 (1993); *Timberline Equip. v. St.*

*Paul Fire and Mar. Ins.*, 281 Or. 639, 643 (1978); *and May v. Chicago Insurance Co.*, 260 Or. 285, 292, 490 P.2d 150 (1971)).

In interpreting ORS Chapter 659A, Oregon courts look at four nonexclusive factors for consideration in assessing the right to control: (1) direct evidence of the right to, or the exercise of, control; (2) the method of payment; (3) the furnishing of equipment; and (4) the right to fire. *McClusky*, 308 Or. App. At 142–43. While Oregon recognizes that "more than one employer can possess a right to control an employee," if an entity did not possess a right to control an employee, it is not covered under ORS Chapter 659A. *McClusky*, 308 Or. App. at 144-145.

Summarized in the evidence evaluated under the Title VII analysis, none of the ORS Chapter 659A factors fall in plaintiff's favor. Weyerhaeuser was contractually prohibited from hiring, disciplining, supervising, controlling, or terminating plaintiff. MSC ¶ 4B, C; NSSA ¶ 3. EO paid plaintiff and furnished her with tools and equipment to perform her job. Response to RFA Nos. 15-18; Perfecto Decl., ¶ 8; Molina Decl., ¶ 8. Therefore, as with the Title VII analysis, Weyerhaeuser was not plaintiff's employer under ORS Chapter 659A.

### III.   Plaintiff's Motion under Rule 56(d) to Defer Ruling

In her response, plaintiff also moves the Court, under Rule 56(d), to defer ruling on Weyerhaeuser's motion for summary judgment, contending that such is premature based on plaintiff's need for additional discovery. Resp. at 8.

Under Rule 56(d), a court may defer ruling on a motion for summary judgment if "a nonmovant shows by affidavit or declaration that, for specified reasons, it cannot

present essential facts to justify its opposition[.]" Fed. R. Civ. P. 56(d). The party seeking to defer the ruling bears the burden of showing "what other specific evidence it hopes to discover and the relevance of that evidence to its claims." *Stevens v. CoreLogic, Inc.*, 899 F.3d 666, 678 (9th Cir. 2018) (citation and brackets omitted). A court may deny a request for additional discovery under Rule 56(d) if the information sought would not aid in its disposition of the summary judgment motion. *See id.* at 677 (holding that a district court may deny a request under Rule 56(d) "when the information sought would not have shed light on any of the issues upon which the summary judgment decision was based.").

Here, plaintiff seeks deferred ruling to depose Weyerhaeuser witnesses and obtain emails or other communications regarding Weyerhaeuser's relationship with EO or the workers that EO placed at Turner facility. Resp. at 10-11.

Defendant contends that plaintiff's initial disclosures and discovery responses failed to identify a single Weyerhaeuser employee as having any knowledge or information about the allegations asserted in her Complaint. Def's Reply at 26.

The Court finds that, on this record, plaintiff has personal knowledge of her own training, direction, instruction, and supervision and had the opportunity to provide factual statements in her declaration that Weyerhaeuser had any involvement. However, plaintiff has not met her burden to identify any such instance. Further, in resolving this motion, the Court has reviewed a significant number of exhibits and declarations produced in evidence form the parties in

discovery. Accordingly, the Court finds that further discovery is not necessary to resolve the motion.

## CONCLUSION

Weyerhaeuser's Motion for Summary Judgment, ECF No. 36, is GRANTED. Weyerhaeuser is DISMISSED as a defendant from this case. To the extent Weyerhaeuser seeks costs and fees, it is directed for file a motion in 30 days of this Order, supported by legal authority demonstrating its entitlement to costs and fees.

It is so ORDERED and DATED this 13th day of October 2023.

 /s/Ann Aiken  
ANN AIKEN  
United States District Judge